JAHAN CO., Plaintiff-Appellee,

v.

DAKOTA INDUSTRIES, INC., Defendant-Appellant.

Civ. A. No. 82–3903.

United States District Court, D. New Jersey.

Feb. 3, 1983.

Cole, Schotz, Bernstein, Meisel & Forman, Rochelle Park, N.J., for plaintiff-appellee.

Eric J. Bal, Union City, N.J., for defendant-appellant.

OPINION

MEANOR, District Judge.

### I.

Plaintiff is a New Jersey corporation with its principal place of business in Hackensack, New Jersey. Defendant Dakota Industries is a South Dakota corporation, with its principal place of business in Sioux Falls, South Dakota. Plaintiff is engaged in the business of importing and exporting merchandise to the Middle East. Defendant manufactures field jackets for use by the military and for private sale. In June of 1981, plaintiff inquired as to the possibility of defendant manufacturing field jackets for sale to plaintiff under plaintiff's label. Defendant shipped a sample jacket to plaintiff on June 16, 1981. In September of 1981, after sending a representative to inspect defendant's facilities and to speak with defendant's vice-president, plaintiff purchased 413 second quality field jackets and 190 first quality jackets for $14,629.00. The 190 first quality jackets conformed to plaintiff's specifications and with the June 16 sample. In September of 1981, an additional 5000 jackets were ordered at a price of $135,000.00. By January 7, 1981, advance payment in the amount of $130,000 had been tendered to defendant. The jackets were received by plaintiff on January 18, 1982, and were found to be grossly defective. Defendant has refused to return the $130,000 paid for the jackets in exchange for return of the jackets.

On July 22, 1980, defendant Dakota Industries filed a petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court for the District of South Dakota. On April 19, 1982, plaintiff Jahan Industries filed a complaint in the Bankruptcy Court for the District of New Jersey. The complaint was in three counts for breach of contract. Plaintiff requested that it be awarded the amount of $130,000 plus interest; attorney fees; and costs (Count I); that it be awarded damages for lost profits and damage to its business reputation (Count II); and that punitive damages be awarded (Count III). On April 19,

1982, a "Summons and Notice of Trial" was issued by the Clerk of the Bankruptcy Court for the District of New Jersey and served upon defendant by certified mail. Defendant was instructed to file an answer to plaintiff's complaint by May 19, 1982, and the matter was scheduled for trial beginning on June 8, 1982. Defendant failed to answer and partial default judgment was entered in favor of plaintiff. Judgment was entered on Count I in the amount of $130,000. Judge DeVito further ordered that default be entered in favor of plaintiff on the balance of the Second and Third Counts and that plaintiff "shall be entitled to submit additional proofs in affidavit form in connection with the request for entry of additional judgment by default on Counts Two and Three of the Complaint and on the question of plaintiff's borrowing rate of interest." Default Judgment of June 3, 1982.

On June 23, 1982, Eric J. Bal, attorney for defendant Dakota Industries, filed a motion to have the default judgment vacated and the case transferred to the South Dakota Bankruptcy Court. On July 1, 1982, the South Dakota Bankruptcy Court Judge entered an order in defendant's reorganization proceeding directing the Clerk of the Court to refrain from entering Judge DeVito's default judgment of June 3, 1982. The South Dakota Judge stated that the South Dakota Bankruptcy Court had exclusive jurisdiction over defendant and all its property, and that Judge DeVito's default judgment was in violation of the automatic stay provisions of the Bankruptcy Code. On July 2, 1982, the Clerk of the South Dakota Bankruptcy Court issued a "Notice to Creditors and other Parties in Interest" scheduling a hearing on August 24, 1982, to determine the disposition of the New Jersey Bankruptcy Court's default judgment. With respect to defendant's motion in the New Jersey Bankruptcy Court, oral arguments were heard on August 17, 1982, and Judge DeVito filed a written opinion on September 21, 1982, denying defendant's motion to vacate the default judgment. On October 5, 1982, defendant filed a "Notice of Appeal to the District Court" with the New Jersey Bankruptcy Court.

## II.

The issues before the court are:

1. Does the Bankruptcy Court for the District of New Jersey have jurisdiction, or is jurisdiction exclusively vested in the Bankruptcy Court for the District of South Dakota?

2. Was service of process proper?

3. Do the circumstances of this case warrant a reversal of Judge DeVito's decision not to vacate the default judgment?

## III.

### A.  JURISDICTION

■    Bankruptcy Court jurisdiction is provided for in section 241(a) of the Bankruptcy Act of 1978, 28 U.S.C. § 1471 (1976 ed., Supp. III).[1] Section 1471 states, in pertinent part, the following:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdic-

---

1. This section does not become effective until April 1, 1984. Congress provided for Bankruptcy Court jurisdiction during the transition period, however. Congress declared:

(b) During the transition period, the amendments made by sections 241, 243, 250, and 252 of this Act shall apply to the courts of

bankruptcy continued by section 404(a) of this Act the same as such amendments apply to the United States bankruptcy courts established under section 201 of this Act.

Pub.L. No. 95–598, Title IV, § 405, 92 Stat. 2685.

tion conferred by this section on the district courts.

*Id.* It is important to note that under subsection (b), the district court has original but not exclusive jurisdiction over all civil proceedings arising under Title 11 *or arising in or related to cases under Title 11.* This subsection has been held to be unconstitutional as violating Article III of the Constitution. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, ——, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982). For purposes of the instant appeal, however, this section must be treated as being constitutionally valid because the Supreme Court's holding in *Marathon Pipe Line Co.* was not retrospective. *Id.* Under subsection (c), the Bankruptcy Court *"for the district in which a case under title 11 is commenced"* shall have the jurisdiction which is conferred on the district courts under section 1471. 28 U.S.C. § 1471 (emphasis added). Subsection (c) has given courts a great deal of trouble because it was poorly drafted. If read literally, subsection (c) would seem to indicate that *only* the Bankruptcy Court for the district in which the Title 11 case was originally commenced would have jurisdiction. Read in this fashion, subsection (c) would conflict with other sections of the Act. For example, section 241(a) of the 1978 Bankruptcy Act, 28 U.S.C. § 1473(b) (1976 ed., Supp. III), states that "a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1000 or a consumer debt of less than $5000 *only in the bankruptcy court for the district in which a defendant resides."* *Id.* (emphasis added). Thus, if section 1471(c) were read literally, it would be possible for a trustee to file suit under section 1473(b) in the bankruptcy court for the district in which the defendant resides, only to find that the court was without jurisdiction because the original suit under Title 11 was commenced in a different district. Thus, it is agreed by most commentators that section 1471(c) should not be read literally so as to preclude suits in bankruptcy courts for other districts. *E.g.,* 1 Collier on Bankrupt-

cy ¶ 3.01, at 3–45 (15th ed. 1982). Collier points out the following:

> The progenitor of section 1471(c) was found in 28 U.S.C. § 1334(d)(1), which section 216 of S. 2266 proposed to add. That proposed section would have provided:
>
> "... [A] bankruptcy judge may exercise all powers and jurisdiction conferred on the district court in cases under title 11 and in civil proceedings under title 11 or arising under or related to cases under title 11."

> It was the intent of this subsection
>
> "that the bankruptcy court will receive and the bankruptcy judge will handle cases and proceedings under title 11..." [S.Rep. No. 989, 95th Cong., 2d Sess. 154 (1978).

*Id.* It has been held that section 1471(c) does not act to grant jurisdiction *only* in the Bankruptcy Court for the district in which the proceeding under Title 11 was originally commenced. In *In re Coleman American Companies, Inc.,* 6 B.R. 251 (Bkrtcy.D.Col. 1980), a Chapter 11 case had been filed in the Bankruptcy Court for the District of Kansas. A secured creditor subsequently filed a complaint seeking relief from the automatic stay of section 362(a) in the Bankruptcy Court for the District of Colorado. The defendant moved to dismiss the case, contending that the Bankruptcy Court for the District of Colorado lacked jurisdiction. In denying defendant's motion, the court stated: "The Code and the amendments to title 28 envision a national bankruptcy system. Jurisdiction in one bankruptcy court is jurisdiction in all." *Id.* at 254. Thus, if the district courts would have jurisdiction under section 1471(b), *any* Bankruptcy Court has jurisdiction. In the instant case, it is clear that the Bankruptcy Court for the District of New Jersey had jurisdiction under section 1471(c). The issue becomes whether venue was proper in New Jersey.

## B. VENUE

Section 241(a) of the Bankruptcy Act of 1978, 28 U.S.C. § 1473 (1976 ed., Supp. III),

deals with venue of proceedings arising under or related to cases under Title 11. Subsection (a) states the general rule regarding venue: "Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending." *Id.* § 1473(a). Subsection (e), however, states:

> (e) A proceeding arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the bankruptcy court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim, or in the bankruptcy court in which such case is pending.

*Id.* § 1473(e). Subsection (e) is directly applicable to the instant case. The term "representative of the estate" is defined by the legislative history of section 1473(e). The House Report states:

> Subsection (e) permits a party adverse to the estate to sue in the district where he might have sued in the absence of the operation of the debtor's business after the commencement of the case.
>
> The phrase "representative of the estate" is used in this subsection instead of "trustee" to make clear that a debtor in possession, which acquires all of the rights and powers of a trustee under proposed 11 U.S.C. 1108 (one of which is the status of representative of the estate under proposed 11 U.S.C. 323) is liable to suit in the venue prescribed by this subsection.

H.Rep. No. 595, 95th Cong., 1st Sess. 447 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6402. In the instant case, the defendant is a debtor in possession of $130,000. "Debtor in Possession" is defined as a "debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case." 11 U.S.C.

§ 1101(1) (1976 ed., Supp. III). Thus, according to the legislative history quoted *supra,* the defendant is a representative of the estate. Because defendant is being sued for a claim arising after the commencement of the Title 11 proceeding, and for a claim arising out of the operation of the defendant's business, venue is governed by section 1473(e).

Defendant argues that the automatic stay provisions of the Bankruptcy Act prevent venue in New Jersey. Defendant relies upon Bankruptcy Rule 11–44 which states:

> (a) *Stay of Actions and Lien Enforcement.* A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Act, for the purpose of the rehabilitation of the debtor or the liquidation of his estate.

Chapter XI Bankruptcy Rule 11–44 (effective July 1, 1974). As defendant points out, this rule would seem to be in conflict with a statutory provision of the Act, 11 U.S.C. § 362 (1976 ed., Supp. III), which deals with automatic stays. What defendant fails to realize, however, is that Bankruptcy Rule 11–44(a) was superseded by section 362 of the 1978 Bankruptcy Code. Comment to 1978 Bankruptcy Code; *see In re Seafarer Fiberglass Yachts,* 1 B.R. 358, 361 n. 2 (Bkrtcy.E.D.N.Y.1979) (section 362(c) supersedes Rule 11–44(c)). In any event, Rule 11–44(c) does not apply to situations where a company becomes a creditor of the debtor *after* the filing of the Chapter 11 petitions. *Id.* at 361. Thus, the automatic stay provisions of section 362 are applicable in the instant case. Section 362 states, in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title operates as a stay applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title.

11 U.S.C. § 362(a). It must be noted that section 362 only provides for a stay when the action against the debtor "was or could have been commenced before the commencement of the case under this title." *Id.* In the instant case, the contract action was brought after the Chapter 11 case, and could not possibly have been brought prior to the Chapter 11 case. Therefore, the Chapter 11 proceeding in South Dakota did not act automatically to stay the New Jersey proceeding.

■ Having established that the New Jersey proceeding was not automatically stayed, and that venue is governed by section 1473(e), the court must determine whether venue in New Jersey is proper. Section 1473(e) states that venue will lie in the district where the party could, under applicable non-bankruptcy venue provisions, have commenced the action. Plaintiff claims that 28 U.S.C. § 1391(a) (1976) governs venue in the instant case because jurisdiction is founded solely on diversity of citizenship. Defendant, however, contends that venue is controlled by section 1391(b) because a federal claim under the Bankruptcy Act is involved. I do not believe that defendant's claim has merit. Merely because jurisdiction and venue in this action are governed by the Bankruptcy Act does not mean that plaintiff's claim arises under federal law. Collier seems to recognize this when he states: "if diversity of citizenship does not exist, and if no other grounds for federal district court jurisdiction exist, then, under non-bankruptcy law, the suit has to be brought in the appropriate state or states." 1 Collier on Bankruptcy ¶ 3.02,

at 3–181 (15th ed. 1982). If a federal question were involved merely because jurisdiction and venue were governed by the Bankruptcy Act, there would *always* be federal question jurisdiction in any section 1473(e) case. Plaintiff's claim is purely one for breach of contract, and no federal question exists. Thus, venue is controlled by section 1391(a) which states that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a). Because all plaintiffs reside in New Jersey, venue is proper in the District of New Jersey.

## C. SERVICE OF PROCESS

■ Defendant contends that service of process was improper because the Federal Rules of Civil Procedure and the New Jersey Court Rules regarding service of process were not complied with. Service of process in an adversary bankruptcy proceeding, however, is governed by Bankruptcy Rule 704, which is an adaptation of Fed.R.Civ.P. 4. Rule 704 states:

(c) *Service by Mail.* Service of summons, complaint, and notice of trial or pre-trial conference may also be made within the United States by first-class mail postage prepaid as follows:

. . . .

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons, complaint, and notice directed to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Bankruptcy Rule 704(c)(3). In the instant case, Rule 704(c)(3) was complied with in almost every respect. A copy of the summons, complaint, and notice of trial was

sent to the defendant corporation first class postage prepaid. The only way in which plaintiff deviated from the requirements of the rule is that plaintiff does not appear to have directed the mailing to the attention of an officer of the defendant company. The Advisory Committee's Note to Rule 704 states that "it is not necessary for the officer or agent of the defendant to be named in the address so long as the mail is addressed to the defendant's proper address and directed to the attention of the officer or agent by reference to his position or title." Despite the fact that the mailing was not directed to the attention of an officer of the defendant corporation, I believe that service of process was sufficient under Rule 704. Rule 704(h) states: "Service of process under this rule shall be effective notwithstanding an error in the papers served or the manner or proof of service if no material prejudice resulted therefrom to the substantial rights of the party against whom the process issued." Bankruptcy Rule 704(h). In the instant case, no material prejudice resulted from the failure to direct the mailing to the attention of an officer. Defendant's attorney received all papers by May 7, 1982, *see* Appellant's Brief at 4, which allowed defendant sufficient time to file an answer and other papers with the court.

## D. ENTRY OF DEFAULT JUDGMENT

■ Mr. Bal, defendant's New Jersey attorney, argues that Judge DeVito's decision not to vacate the default judgment should be reversed. The default judgment was entered on June 3, 1982, because defendant never filed an answer within the allotted time period. Mr. Bal explained why no action was taken at the oral argument before Judge DeVito. Mr. Bal claims that he was called by Mr. Frank Eichler, defendant's South Dakota counsel, on May 7, 1982, and that Mr. Eichler requested that Mr. Bal make a motion in the New Jersey Bankruptcy Court to transfer the case to South Dakota. Mr. Bal agreed to do so if given a retainer of $250 and sent the relevant papers. Mr. Bal was not told of any abbreviated time schedule. Mr. Bal received the papers on May 11, 1982, but did not receive the retainer. Because he did not receive the retainer, Mr. Bal did not immediately review the papers. Mr. Bal also claims that he did not review the papers because there were several pressing legal issues pertaining to an election which he was forced to attend to. Mr. Bal did not review the papers until June 2, 1982, at which time he telephoned Mr. Eicher and told him that he required the $250 retainer. The retainer was sent immediately. In short, the only excuse put forth by Mr. Bal for failing to act diligently is that he did not receive his retainer, and that he was occupied by other matters.

Judge DeVito issued a written opinion on September 21, 1982, which adequately states the law in this area. Bankruptcy Rule 755 provides in relevant part that "[f]or good cause shown the court may set aside a judgment by default in accordance with Rule 924." Bankruptcy Rule 755(b). Bankruptcy Rule 924, with certain exceptions, makes Fed.R.Civ.P. 60 applicable to bankruptcy cases. Fed.R.Civ.P. 60 states: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Judge DeVito's opinion also refers to Collier which states that "*In addition* to the reasons specified in Rule 60(b), Bankruptcy Rule 755(b) *also requires* that good cause be shown." 13 Collier on Bankruptcy ¶ 755.05, at 7–458 (14th ed. 1977) (emphasis added). Through affidavits, Mr. Bal suggests two reasons why the default judgment should have been vacated: a) there was a misunderstanding regarding his retainer fee; b) a heavy workload prevented him from attending to the matter. Judge DeVito held that these were not adequate justifications under Fed.R. Civ.P. 60. Judge DeVito noted that there is "an inherent prejudice to creditors when the estate of a bankrupt is subject to dissipation by expenses incurred each additional day." Opinion at 2. Thus, in bankruptcy matters there is a need for promptness. Judge DeVito also noted that appellant

failed to establish any meritorious defense to the action commenced by plaintiff-appellee. In short, Mr. Bal failed to present an extraordinary situation which would warrant the court's vacating the judgment under Rule 60. I believe that Judge DeVito was correct in his holding, and I do not believe that his decision should be disturbed.

### IV.

I find that the Bankruptcy Court for the District of New Jersey had jurisdiction to enter a default judgment, and furthermore, that service of process was sufficient under the Bankruptcy Rules. Finally, Judge DeVito's decision not to vacate the entry of default judgment was justified, and will be affirmed.

The court will enter its own order.