**In re Louis FLEET, Debtor.**

**Louis FLEET, Sarah Morrison, Philadelphia Unemployment Project, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**UNITED STATES CONSUMER COUNCIL, INC., Jack Rhode, Betty Rosi, Deborah Tavares, Defendants.**

**Bankruptcy No. 81–04969K.
Adv. No. 83–0880K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 15, 1985.

Bruce Fox, Henry J. Sommer, Philadelphia, Pa., for debtor/plaintiffs.

David M. Seltzer, c/o Barry J. Hockfield, P.A., Philadelphia, Pa., for defendants.

James J. O'Connell, Philadelphia, Pa., for Chapter 13 Standing Trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

A motion to dismiss a complaint for lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and failure to state a claim upon which relief can be granted is before the Court for decision. The complaint alleges violations of the New Jersey Consumer Fraud Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and section 329 of the Bankruptcy Code. The threshold issue raised by the motion to dismiss is whether the cause of action against the defendants for their alleged violations of state law has a sufficient nexus to the bankruptcy cases of the individual plaintiffs to invoke the jurisdiction of the federal district court as a proceeding "related to" a case under title 11. See 28 U.S.C. §§ 1334(b) and 157. Because we decide this issue in the affirmative, and the remaining arguments advanced by defendants are without merit, we will deny the motion to dismiss.

The facts as alleged in the complaint are as follows:

Defendant, United States Consumer Council, Inc., ("U.S.C.C.") is a New Jersey corporation located at 1800 West Pavillion Street in Camden, New Jersey. Defendant, Jack Rhode, is a major shareholder and officer of the corporation. Defendants, Betty Rosi and Deborah Tavares, are employees of the corporation. U.S.C.C. is in the business of offering financial counselling and legal advice on financial matters to consumers experiencing financial difficulties.

Plaintiffs, Louis Fleet ("Fleet") and Sarah Morrison ("Morrison") brought this class action lawsuit against defendants, alleging that defendants defrauded them into paying for financial counselling and assistance which was never rendered.[1] Defendants advertised themselves as being "expert" financial counsellors, when, in fact, the only service which they provided was a referral to a bankruptcy attorney.

Fleet learned about U.S.C.C. from a radio advertisement on a Philadelphia radio station. He contacted U.S.C.C. on November 23, 1981 because he was in default on his mortgage and needed financial and legal advice. Fleet believed that U.S.C.C. was affiliated with the federal government because its name and insignia are similar to that used by federal agencies. He met with Rosi, who, after inquiring about his assets and income, told him that a fee of $225.00 would be required to stop the mortgage foreclosure process. He paid the $225.00 fee to defendants and had no further meetings with U.S.C.C. or its employees after November 21, 1983. Rosi ar-

---

1. Philadelphia Unemployment Project, a nonprofit organization, is also a plaintiff in this action. Both Fleet and Morrison are members of Philadelphia Unemployment Project.

ranged for Fleet to meet with David Paul Daniels, Esquire, who filed a petition under Chapter 13 of the Bankruptcy Code on his behalf for a legal fee of $750.00. Defendants did nothing for Fleet to stop the mortgage foreclosure process. His present counsel subsequently contacted the Department of Housing and Urban Development, which accepted assignment of the mortgage.

Morrison similarly contacted the offices of U.S.C.C. after hearing its financial counselling services advertised on the radio. Morrison met with Tavares, an employee of U.S.C.C., in March of 1982 to discuss her financial problems. Tavares told her she would refer her to a bankruptcy attorney after she paid a fee of $250.00. Morrison paid the fee and was referred to David P. Daniels, Esquire, who filed a Chapter 13 petition on her behalf for a legal fee of $800.00.

Defendants did not provide financial counselling to Morrison or provide her with any assistance other than the referral to attorney Daniels.

Plaintiffs contend that the advertisements used by defendants were unfair and deceptive in that they gave the impression to consumers that defendants were affiliated with agencies of the federal government and that defendants erroneously held themselves out as expert financial consultants when they were not qualified to advise or counsel consumers concerning bankruptcy and other legal matters.

Plaintiffs seek the following relief: (1) certification of the proceeding as a class action; (2) assessment of damages in the case of each individual plaintiff under the New Jersey Consumer Fraud Act[2] and the Pennsylvania Unfair Trade Practices and Consumer Protection Law;[3] (3) a permanent injunction enjoining the defendants from advertising or providing bankruptcy advice in the future; and (4) an award of reasonable attorneys' fees to plaintiffs.

In their motion to dismiss, defendants contend that violations of state law do not fall within the purview of the Bankruptcy Court.

Defendants seek dismissal of plaintiffs' action on the grounds of lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and failure to state a claim upon which relief can be granted.

## DISCUSSION

### A. SUBJECT MATTER JURISDICTION

We will begin our discussion with a review of the various statutory and local provisions regarding the scope of bankruptcy court jurisdiction in order to address the issue of subject matter jurisdiction.

Prior to 1978, the jurisdiction of a bankruptcy court was *in rem*, and, absent the consent of an adverse party, turned upon the possession of property. With the passage of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, ("Code"), Congress expanded that jurisdiction to include all civil proceedings arising under title 11 of the United States Code or related to a title 11 case. 28 U.S.C. § 1471. *See Beasley v. Kelco Feeds, Inc.,* (In re Trim-Lean Meat Products, Inc.), 11 B.R. 1010, 1011 (D.Del. 1981). This broad grant of power authorized a bankruptcy court to entertain civil suits seeking personal judgments as well as *in rem* judgments.

On June 28, 1982, the United States Supreme Court held that Congress acted unconstitutionally in granting non-Article III bankruptcy judges the authority to adjudicate proceedings "related to" a bankruptcy case. *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Only subsection c of § 1471 was invalidated by *Northern Pipeline,* although Congress subsequently repealed all of § 1471. The grant of jurisdiction to the Article III district courts contained in § 1471(a) and (b) remained intact after *Northern Pipeline. See Gold v. Johns-Manville Sales Corp.,*

---

**2.** N.J.Stat.Ann. § 56:8–1, *et seq.* (West 1964).

**3.** Pa.Stat.Ann. tit. 73, § 201–1 *et seq.* (Purdon 1976).

723 F.2d 1068, 1075 & n. 11 (3d Cir.1983). The Supreme Court stayed the effect of its decision until October 4, 1982, and subsequently extended the stay until December 24, 1982, at which time the decision began to apply prospectively only.

When the stay of the *Northern Pipeline* decision expired on December 24, 1982, the Judicial Conference of the United States proposed a model interim rule for the continuation of the bankruptcy court system until Congress enacted remedial legislation. District courts across the country, including the United States District Court for the Eastern District of Pennsylvania,[4] adopted this interim rule, also known as the Emergency Rule, which provided a procedural mechanism for the automatic referral of all bankruptcy cases to bankruptcy judges. The rule provided that the bankruptcy judge could not enter a final order in a proceeding "related to" a bankruptcy case. In "related to" proceedings, the bankruptcy judge was required to submit proposed findings of fact, conclusions of law and a proposed order to the District Court. This delegation of authority to the bankruptcy judges was widely upheld by the appellate courts, including the Third Circuit Court of Appeals. *See Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir.1983), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983).

 The Emergency Rule continued in effect until July 10, 1984, when the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Act") was signed into law by the President, Pub.L. No. 98–353 (July 10, 1984). The jurisdictional and procedural approaches of the 1984 Act with respect to "related" proceedings are nearly identical to those of the Emergency Rule. The 1984 Act, which repealed 28 U.S.C.

§ 1471, also amended 28 U.S.C. § 1334, and added § 157 to title 28 of the United States Code. Under the revised version of § 1334(a), the district courts have original and exclusive jurisdiction of all cases under title 11. Under § 1334(b) the district courts have original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11.[5]

Under 28 U.S.C. § 157, each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 shall be referred to the bankruptcy judges for that district. By Referral Order of July 25, 1984, the United States District Court for the Eastern District of Pennsylvania has referred all cases and all proceedings arising under title 11, with the exception of personal injury tort and wrongful death claims, to the bankruptcy judges for this District.

 Bankruptcy judges may hear and enter final orders on all "core" proceedings arising under title 11 pursuant to § 157(b)(1). Under § 157(c)(1), bankruptcy judges may also hear "noncore" matters which are related to a case under title 11. However, absent consent of all parties to the dispute, we may not enter final orders in those disputes but must submit proposed findings of fact and conclusions of law to the District Court for consideration. Section 157(b)(2) provides a nonexhaustive list of core proceedings, the more important of which are (1) all matters concerning the administration of the bankruptcy estate, (2) counterclaims against the estate by persons or entities filing claims against the estate, (3) proceedings for turnover of property of the estate and, (4) other proceedings affecting the liquidation of the

---

4. The United States District Court for the Eastern District of Pennsylvania adopted an Emergency Rule on December 15, 1982 and amended it on December 29, 1982.

5. In their motion to dismiss, defendants argue that the Court lacks subject matter jurisdiction because the amount in controversy for each claim is less than $10,000.00 and the claims cannot be aggregated for the purposes of meeting the amount in controversy requirement. This argument is without merit because under 28 U.S.C. § 1334(b), a plaintiff suing in federal court in a proceeding which is related to a debtor's bankruptcy case need not meet the diversity requirement. An independent basis for jurisdiction in the district court exists if the proceeding is related to the bankruptcy case, regardless of the amount in controversy.

assets of the estate or the adjustment of debtor-creditor or equity holder relationships. All proceedings which are not integral to the restructuring of debtor-creditor rights and do not involve a cause of action created by title 11 fall into the residual category of "noncore" or "related" proceedings.

The complaint in this adversary proceeding was filed by the plaintiffs on March 31, 1983, while the Emergency Rule was still in effect. Nevertheless, the jurisdictional provisions of the 1984 Act are applicable to those cases which were pending on the date of the passage of the Act, or were filed thereafter. Pub.L. No. 98–353, § 122(a), 98 Stat. 333, 346 (1984). Since this case was pending on the date of the passage of the 1984 Act, the new jurisdictional provisions govern the disposition of the instant adversary proceeding.

■ In the matter at bench, the only ostensible basis for bankruptcy court jurisdiction is that the cause of action is "related to" a case or cases under title 11. The test for determining whether a civil proceeding is "related to" a bankruptcy case is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Bobroff v. Continental Bank, (In re Bobroff)*, 766 F.2d 797, 802 (3d Cir.1985); *Pacor, Inc. v. Higgins, (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir.1984). An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. *Bobroff* at 802; *Pacor* at 994. For subject matter jurisdiction to exist, there must be some nexus between the related civil proceeding and the title 11 case. *Hall v. Jet Television Rental, Inc., (In re Hall)*, 30 B.R. 799, 802 (M.D.Tenn.1983).

In *Bobroff*, the Court of Appeals held that the underlying causes of action, which had been removed from state court to the bankruptcy court where the debtor's bankruptcy case was pending, were not property of the estate. Therefore, the district court did not have jurisdiction to adjudicate the debtor's tort claims as being "related to" the debtor's bankruptcy case. The Court of Appeals pointed out that in a Chapter 7 liquidation case, the only property interests of a debtor which become part of the estate are those existing "as of the commencement of the case". 11 U.S.C. § 541. Since the debtor's causes of action in *Bobroff* did not accrue until after the case was commenced, the Court reasoned that the causes of action were not property of the estate and the district court was without subject matter jurisdiction to adjudicate them as being "related to" the debtor's bankruptcy case.

■ In the matter at bench, the facts differ from *Bobroff* in two (2) ways. First, the activities complained of here occurred immediately prior to the filing of the plaintiffs' bankruptcy petitions; therefore, the claims asserted by plaintiffs are pre-petition claims rather than post-petition claims, and any damages recovered would be property of the estate. Second, the plaintiffs' petitions are Chapter 13 petitions, rather than Chapter 7 petitions. In a Chapter 13 case, property which is acquired by a debtor after the commencement of the case and until the case is closed, dismissed or converted, is considered property of the estate in addition to the property specified in § 541. 11 U.S.C. § 1306(a)(1). In Chapter 7 and 11 cases, only the interests of the debtor as of the commencement of the case are considered property of the estate. 11 U.S.C. § 541. Thus, even if the causes of action, upon which this proceeding is based, had arisen post-petition, they would still be considered property of the estate under the expansive definition of that phrase contained in § 1306(a)(1).[6]

---

**6.** 11 U.S.C. § 1306(a)(1) provides:
 (a) Property of the estate includes, in addition to the property in section 541 of this title—

 (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a

We also find that a sufficient "nexus" exists between the adversary proceeding and the plaintiffs' title 11 bankruptcy cases. Plaintiffs consulted defendants for the purpose of obtaining financial counselling. Apparently, plaintiffs were led to believe that the only solution to their difficulties was the filing of a Chapter 13 petition. However, bankruptcy is not always the appropriate solution to an individual's problems with creditors. If plaintiffs had consulted competent bankruptcy counsel, they would have been advised of the various alternatives to bankruptcy such as common law compositions or workouts. They would also have been advised of the advantages and disadvantages of each chapter in order to determine which chapter was most suitable to their particular needs. Once a decision is made to file for relief, pre-planning is essential to the successful outcome of a title 11 case. Finally, they would have been advised of the possible ramifications of filing for relief under the Bankruptcy Code. The bankruptcy court is not the proper forum for the unwary or ill advised. This Court is acutely aware of the many problems which debtors

encounter due to lack of proper counselling.

In sum, plaintiffs may have been harmed by defendants' activities in several ways. It appears that defendants were engaged in a clever scheme to extract monies from financially troubled consumers under the guise of providing bankruptcy "counselling". Not only did plaintiffs pay valuable consideration to non-lawyers with no experience in bankruptcy matter for advice concerning bankruptcy, apparently, plaintiffs did not receive the type of counselling which they would have received if they had consulted true experts in the field.

These allegations are of particular concern to this Court because, if established as true, defendants' activities constitute an abuse of the bankruptcy court system. To rectify the harm resulting from defendants' actions, plaintiffs seek monetary damages under state laws regulating false advertising and unfair trade practices, as well as injunctive relief. Although this action may have been brought in state court, it seems appropriate that it be litigated here in this forum, which is inherently sensitive to abuses within the bankruptcy system.[7]

case under chapter 7 or 11 of this title, whichever occurs first ...

7. Plaintiffs' action is not the first effort within the United States Bankruptcy Court for the Eastern District of Pennsylvania to deal with abuses of the system by debtor counselling operations. On October 12, 1982, the Standing Trustee for Chapter 13 cases in this District filed a complaint in the Bankruptcy Court to enjoin certain individuals and business entities from engaging in the unauthorized practice of law. These parties were not licensed to practice law but were counselling and advising debtors on the preparation and filing of bankruptcy petitions. Certain debtors had been irreparably harmed by the incomplete, inaccurate, and erroneous advice provided to them. After a hearing on class certification, we held that the Trustee's action could be maintained as a defendant class action, and that the Standing Trustee could be appointed as a special master to monitor compliance with an injunction prohibiting members of the class from engaging in the unauthorized practice of law. *O'Connell v. David,* 35 B.R. 141 (Bankr.E.D.Pa.1983).

On appeal, the District Court adopted the findings of this Court with respect to the activities of

the named defendants, but held that a class would not be certified in the absence of evidence in the record that the named defendants would provide fair and adequate representation of the class. The District Court declined to appoint the Standing Trustee as a special master, since there was no need for such appointment in the absence of a class. *O'Connell v. David,* 35 B.R. 146 (E.D.Pa.1983), aff'd 740 F.2d 958 (3d Cir.1984). *See also,* our decision in *In re Lane,* No. 83–01421K, slip. op. (Bankr.E.D.Pa. Aug. 26, 1983), *aff'd as modified,* No. 84–206, slip. op. (E.D.Pa. Mar. 30, 1984) (Green, J.) (counsel for the debtors, who conspired with a lay person, operating a debtor counselling service to defraud the debtors, and who shared fees with a non-lawyer in violation of the Code of Professional Ethics, was ordered to refund all counsel fees), and our decision in *Stevenson v. Consumer Protection Services (In re Stevenson),* 49 B.R. 914 (E.D.Pa.1985) (denying motion of defendant, Buddy Caldwell, to dismiss a complaint alleging violations of the Pennsylvania Trade Practices and Consumer Protection Law, Pa.Stat.Ann. tit. 73, § 201–1 *et seq.* (Purdon 1976) in the course of offering financial counselling and advice to consumers on the filing of bankruptcy petitions.

For all of the above reasons, we hold that the District Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and we may hear the proceeding and make proposed findings of fact and conclusions of law to the District Court pursuant to 28 U.S.C. § 157(c)(1). Therefore, the complaint should not be dismissed for lack of subject matter jurisdiction.

## B. IN PERSONAM JURISDICTION

Defendants also seek to have this action dismissed for lack of *in personam* jurisdiction. First, defendants argue that they are not subject to service of process or amenable to suit in the Eastern District of Pennsylvania because they do not reside in, or do business in Pennsylvania.

This argument is incorrect as the following analysis of the applicable venue provisions will show. The basic venue provision, 28 U.S.C. § 1409(a), provides that a proceeding related to a case under title 11 may be commenced in the district court in which such case is pending. There are exceptions to this general rule. However, these exceptions apply only to causes of action which are based on claims arising after the commencement of a bankruptcy case from the operation of the business of the debtor, or where the amount sought to be recovered is less than $1,000.00 or, a consumer debt of less than $5,000.00. 28 U.S.C. § 1409(b) and (d).

In the matter at bench, plaintiffs mailed a copy of the complaint and summons with notice of trial date to defendants Rhode and U.S.C.C. by certified mail, postage prepaid, in accordance with Rule 704(c) of the Rules of Bankruptcy Procedure.

Service by mail was first authorized under the Rules of Bankruptcy Procedure while the Bankruptcy Act was still in effect. At that time, adversary proceedings could be instituted only against parties who were otherwise subject to the jurisdiction of the district court. Prior to 1976, Rule 704 required a signed receipt for service by mail to be valid. Rule 704 was amended in 1976 to dispense with the requirement of a signed receipt. The exigent circumstances attendant to bankruptcy matters provided the rationale for the relaxation of the prior standard. The Advisory Committee Note to the 1976 Amendment stated:

> *Subdivision (c).* '[F]irst-class mail postage prepaid' is substituted for 'mail requiring a signed receipt' as the authorized mode of making service by mail in the United States. Experience with the provision requiring a signed receipt has been unsatisfactory. Although the defendant's correct address is used for mailing, the defendant is often unavailable to the delivering postman, either to sign or to refuse delivery. First-class mail suffices for service pursuant to Rule 5(b) of the Federal Rules of Civil Procedure and for many other purposes ...

The Rules of Bankruptcy Procedure, including Rule 704(c), remained applicable to cases and proceedings commenced after the passage of the Bankruptcy Reform Act of 1978 ("Code") to the extent they were not inconsistent with the new statute. New procedural rules were drafted to implement the pervasive grant of jurisdiction to the bankruptcy courts under the Code. These new rules became effective on August 1, 1983, *after* service of the complaint and summons in this proceeding. Bankruptcy Rule 7004(b) supplanted Rule of Bankruptcy Procedure 704(c). Nevertheless, the method of service provided under Rule 704(c) and its successor, Rule 7004(b), is identical (first class mail with no requirement of an acknowledgment of receipt or alternative mode of service).

Recently, the Court of Appeals for the Sixth Circuit upheld the constitutional validity of service of process by first class mail under Rule 704(c)(1). *In re Park Nursing Center, Inc.*, 766 F.2d 261, 13 Bankr.Ct.Dec. (CRR) 498 (6th Cir.1985). The Court found that service of process by first class mail meets the due process requirements of the Fifth Amendment. The ruling appears to endorse not only Rule 704(c), but also Bankruptcy Rule 7004(b), since these rules are virtually identical.

■ In summary, this Court has personal jurisdiction over the defendants even though defendant, U.S.C.C., is a New Jersey corporation, and defendants, Rhode, Rosi, and Tavares, are residents of New Jersey. There is no requirement that a defendant reside in or do business in [8] the state or district where an adversary proceeding is commenced in order for the bankruptcy judge, exercising the power of the district court, to obtain *in personam* jurisdiction over that defendant. Nationwide service of process by first class mail was permissible under the procedural rules in effect on the date the complaint was served on defendants, and that method of service is still permissible under the procedural rules which became effective on August 1, 1983.

■ One issue remains to be addressed in the context of *in personam* jurisdiction. Defendants contend that service of process on U.S.C.C. was defective because plaintiffs did not comply with Rule 704(c)(3), regarding service of process on a corporation.

Rule 704(c)(3) states that service of summons, complaint, and notice of trial or pretrial conference may be made within the United States by first-class mail postage prepaid as follows:

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons, complaint, and notice directed to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

U.S.C.C. does not deny that it received the complaint and summons by certified mail, nor does it deny that Rhode, an officer of the corporation, received the identical complaint and summons by certified mail at the same address. Rather, U.S.C.C. contends that service was improper because the envelope sent to U.S.C.C. was not directed to the attention of an officer or agent of U.S.C.C.

Subsection h of Rule 704 clearly allows for *de minimis* errors in service under Rule 704 where there is no material prejudice to the defendant:

Service of process under this rule shall be effective notwithstanding an error in the papers served or the manner or proof of service if no material prejudice resulted therefrom to the substantial rights of the party against whom the process issued....[9]

In the matter at bench, we find that the defect in service of process on U.S.C.C. was *de minimis* since Rhode, an officer of U.S.C.C., received a copy of the complaint and summons, counsel for defendants has been retained, and no judgment by default has been entered due to the failure of U.S.C.C. to receive notice of the lawsuit. Accordingly, plaintiffs' service of process upon U.S.C.C. under Rule 704(c)(3) is deemed effective, notwithstanding the technical error, since there has been no material prejudice to the substantial rights of U.S.C.C., the party against whom the process issued. Defendants' arguments in favor of setting aside the service and dismissal of the complaint for lack of *in personam* jurisdiction must be denied.

## C. FAILURE TO STATE A CLAIM

Defendants' final argument in favor of dismissal of the complaint is that the complaint fails to state a claim upon which relief can be granted against the individual defendants, Rhode, Rosi, and Tavares. Defendants have submitted an affidavit pur-

---

**8.** The complaint alleges that defendants did business in Pennsylvania by advertising on a Philadelphia radio station.

**9.** For caselaw holding that service of process should not be set aside even though service was not directed to the attention of an officer or manager of that office, see *Jahan Co. v. Dakota Industries, Inc.,* 27 B.R. 575 (D.N.J.1983), *aff'd mem.,* 725 F.2d 668 (3d Cir.1983) and *In re Schack Glass Industries, Inc.,* 20 B.R. 967 (Bankr.S.D.N.Y.1982).

porting to prove that Rhode, Rosi and Tavares acted only in their capacity as employees of the corporate defendant.

For the purposes of ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), applicable to this proceeding through Rule 712(b) of the Rules of Bankruptcy Procedure, the factual allegations of the complaint must be viewed in the light most favorable to the plaintiff and the motion may be granted only if it appears certain that the plaintiff is entitled to no relief under any statement of facts which could be proved in support of the claim. *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1968); 2A *Moore's Federal Practice,* ¶ 12.08 (2d ed. 1982).

The complaint in this proceeding alleges that each of the defendants committed certain acts in violation of the New Jersey Consumer Fraud Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law. These allegations must be accepted as true for the purposes of deciding a motion to dismiss.

The defense that the individual defendants are not liable under these Statutes as employees of the corporate defendant is not properly before the Court on a motion to dismiss for failure to state a claim. In deciding a motion to dismiss, the Court may consider only those facts which are alleged in the pleadings. We may not consider matters outside the pleadings. By submitting an affidavit purporting to prove certain facts, the individual defendants have implicitly admitted that proof of facts outside the pleadings will be necessary to decide this issue. Therefore, we will deny defendants' motion to dismiss the complaint for failure to state a claim as to the individual defendants, but reserve the right to address this issue again if it is properly raised in a formal motion for summary judgment.