United States Court of Appeals,

Fifth Circuit.

No. 91-5784.

Gertrude BAUMGART, et al., Plaintiffs-Appellants,

v.

FAIRCHILD AIRCRAFT CORPORATION and Swearingen Aviation Corporation, Defendants-Appellees.

Jan. 22, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before REYNALDO G. GARZA, GARWOOD, Circuit Judges, and WERLEIN[*], District Judge.

WERLEIN, Distct Judge:

These consolidated cases arise from the crash near Kettwig, Germany of a Fairchild Metroliner III Aircraft owned and operated by Nurenburger Flugdienst ("NFD"), a German airline. Plaintiffs are nineteen German citizens who originally sought recompense for their injuries in the Texas state courts. Defendant Fairchild Aircraft Corporation ("Fairchild"), after filing a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas, removed all nineteen cases to federal court. Fairchild then moved the court to dismiss the cases under the doctrine of *forum non conveniens,* arguing that Germany is the proper forum for the resolution of Plaintiffs' claims. Fairchild's motion was granted, and Plaintiffs appealed.

The major issue on appeal is whether the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C. § 157(b)(5), prohibits the district court from dismissing under the doctrine of *forum non conveniens* a bankruptcy-related wrongful death case that arose in a foreign country. We hold that the Act does not prohibit a *forum non conveniens* dismissal.

I. FACTS

On February 8, 1988, a Fairchild Metroliner III Aircraft, owned by the German airline NFD and operated as NFD Flight 108, was making a regularly scheduled flight from Hanover Airport in

[*]District Judge of the Southern District of Texas, sitting by designation.

Hanover, Germany to Lohausen Airport in Dusseldorf, Germany. Approximately seven nautical miles away from landing, the aircraft was struck by lightning, lost electrical power, entered an uncontrolled descent, and flew in and out of the clouds for several minutes before finally crashing near Kettwig, Germany. The two pilots and all nineteen passengers perished.

Personal representatives of the deceased passengers, all of them citizens and residents of Germany, filed nineteen separate lawsuits against Fairchild[1] in sixteen different state district courts of Bexar County, Texas, alleging causes of action based on strict liability, breach of warranty, and negligence. Plaintiffs sought damages for wrongful death and survival, pre-judgment interest, and exemplary damages under Texas state law.

Fairchild, for reasons unrelated to the personal injury suits,[2] filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas. Fairchild subsequently removed all nineteen state court actions to the bankruptcy court, alleging that the actions related to its bankruptcy proceeding as contemplated by 28 U.S.C. § 1334(b).

Plaintiffs, in turn, moved for discretionary abstention under 28 U.S.C. § 1334(c)(1) or, alternatively, for remand of the nineteen cases to state court pursuant to 28 U.S.C. § 1452(b). The Honorable Emilio M. Garza, then United States District Judge, after conducting a *de novo* review of the Bankruptcy Judge's recommendation that Plaintiffs' motion be denied, adopted the recommendation in its entirety. The Court consolidated all nineteen actions in the district court and issued an Order lifting the automatic stay imposed by 11 U.S.C. § 362.

Fairchild then moved to dismiss the consolidated cases on the grounds of *forum non conveniens,* alleging that Plaintiffs' home country of Germany where the airline crash occurred is the proper forum for the resolution of Plaintiffs' claims. Plaintiffs replied that 28 U.S.C. § 157(b)(5) deprived the district court of any discretion to dismiss bankruptcy-related wrongful death actions

---

[1]Appellants also sued Swearingen Aviation Corporation ("Swearingen"), the predecessor in interest to Fairchild. Although Swearingen is named as a defendant in this action, the parties have advised the Court that Swearingen no longer exists as a corporate entity.

[2]Fairchild cites "infighting among Fairchild's competing shareholder groups [leading] to severe lapses in management, followed by layoffs, and eventual pressure from the company's principal lender, Sanwa Business Credit" as the reason for Fairchild's Chapter 11 filing.

pursuant to the doctrine of *forum non conveniens.* The Honorable Edward C. Prado, United States District Judge, dismissed the consolidated cases and ordered Plaintiffs to file suit in Germany within 120 days.[3] It is from this ruling granting Fairchild's Motion to Dismiss that Plaintiffs now appeal.

## II. DISCUSSION

A court's authority to effect foreign transfers through the doctrine of *forum non conveniens* "derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression." *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1155 (5th Cir.1987), *aff'd in part, vacated in part,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *vacated sub nom. Pan Am World Airways, Inc. v. Lopez,* 883 F.2d 17 (5th Cir.1989), *citing Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 530, 67 S.Ct. 828, 835, 91 L.Ed. 1067 (1947). Through this power a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum. *Id., citing Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981); *Koster,* 330 U.S. at 530, 67 S.Ct. at 835; *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947).

The court's interest in controlling a crowded docket also provides a basis for the court's inherent power to dismiss on grounds of *forum non conveniens:* "the "chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.' " *Id., citing Reyno,* 454 U.S. at 241, 102 S.Ct. at 258 (*quoting Koster,* 330 U.S. at 524, 67 S.Ct. at 831). "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id., citing Gulf Oil Corp.,* 330 U.S. at 590-91, 67 S.Ct. at 921. Although the doctrine "arose in the areas of admiralty and equity," this Court

---

[3]By Order dated September 30, 1991, Judge Prado granted Plaintiffs' request that the 120-day time limit for filing the actions in Germany be stayed pending the outcome of this appeal.

has observed that the doctrine "is now applied in a wide spectrum of cases in both federal and state courts." *Id., citing Syndicate 420 at Lloyd's London v. Early American Ins. Co.,* 796 F.2d 821, 825 (5th Cir.1986) (maritime insurance contracts case); *Watson v. Merrell Dow Pharmaceuticals,* 769 F.2d 354, 359-60 (6th Cir.1985) (strict liability pharmaceuticals case).

After examining the cases spawned by the crash in Germany of NFD Flight 108, the district court determined that the convenience of the parties and the court and the interests of justice would be better served if the wrongful death actions were tried in Germany. While Appellants also take issue with the district court's findings as a substantive matter, Appellants' primary focus is their legal argument that the doctrine of *forum non conveniens* is not available to district courts in bankruptcy-related wrongful death actions. Appellants contend that the statutory language and legislative purpose of 28 U.S.C. § 157(b)(5) are inconsistent with and thus preclude a *forum non conveniens* dismissal. The question appears to be one of first impression.

A. *Effect of § 157(b)(5) on the Doctrine of Forum Non Conveniens*

Title 28 U.S.C. § 157(b)(5) provides that

[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy is pending.

28 U.S.C. § 157(b)(5) (West 1991). Appellants insist that the plain meaning and legislative history of the words, "[w]rongful death claims *shall* be tried in the district court....," render the doctrine of *forum non conveniens* inapplicable to bankruptcy-related wrongful death cases. Thus, argue Appellants, the district court is *required* to try these cases even if the convenience of the parties and the ends of justice would be better served by hearing the cases in a foreign forum in which the claims arose.

Although Appellants are correct in stating that the United States Supreme Court and this Court have held that the doctrine of *forum non conveniens* is inapplicable when the language and legislative purpose of a statute are inconsistent with *forum non conveniens* dismissal, the cases cited by Appellants for application of this proposition are quite different from the case at bar. *United States v. National City Lines, Inc.,* 334 U.S. 573, 596, 68 S.Ct. 1169, 1181, 92 L.Ed. 1584 (1948)

("*National City Lines I*" ), held that a district court could not employ the doctrine of *forum non conveniens* to accomplish a domestic transfer of venue in an antitrust suit.[4] The *National City Lines* cases, as well as the third case cited by Appellants, *Industrial Investment Development Corp. v. Mitsui & Co.,* 671 F.2d 876 (5th Cir.1982), *vacated on other grounds,* 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983) (a case also involving violations of the Sherman Act),[5] apply only in the limited context of antitrust actions. As explained in *Kempe,* there is a "crucial point" of difference between antitrust suits and other types of cases:

> [A]ntitrust cases are unlike litigation involving contracts, *torts,* or other matters recognized in some form in every nation. A plaintiff who seeks relief by means of one of these types of actions may appropriately be sent to the courts of another nation where presumably he will be granted, at least approximately, what he is due. But the antitrust laws of the United States embody a specific congressional purpose to encourage the bringing of private claims in the American courts in order that the national policy against monopoly may be vindicated. To relegate a plaintiff to the courts of a nation which does not recognize these antitrust principles would be to defeat this congressional direction by means of a wholly inappropriate procedural device.

*Kempe,* 876 F.2d at 1142-1143, *quoting Laker Airways Ltd. v. Pan American World Airways,* 568 F.Supp. 811, 818 (D.D.C.1983) [emphasis added]. These same concerns were present in *Mitsui,* in which the court determined that Indonesia, the country to which transfer was sought, would refuse

---

[4]*National City Lines I* was decided before Congress enacted 28 U.S.C. § 1404(a), which specifically authorized the district court, "[f]or the convenience of parties and witnesses, and in the interest of justice," to transfer civil actions "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (West 1991). As noted by this Court in *Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138 (5th Cir.), *cert. denied,* 493 U.S. 918, 110 S.Ct. 279, 107 L.Ed.2d 259 (1989):

> [i]n light of the new congressional mandate regarding transfers [§ 1404(a) ], the Supreme Court allowed the [*National City Lines I* ] case to be transferred to another district court on later petition. *United States v. Nat'l. City Lines, Inc.,* 337 U.S. 78 [69 S.Ct. 955, 93 L.Ed. 1226] (1949) (*National City Lines II* ). In that later case, the Court did not indicate what result it would reach in a case where application of the *forum non conveniens* doctrine would lead to dismissal of a Sherman Act case in favor of a foreign forum. Such a situation is not covered by section 1404, which preserves the action, albeit in a different federal venue.

> *Id.* at 1144.

[5]The statute at issue in both *National City Lines* and *Mitsui* is 15 U.S.C. § 22, which provides: "[a]ny suit ... under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business."

to entertain the plaintiffs' Sherman Act claims. *See Mitsui,* 671 F.2d at 891 ("A dismissal for *forum non conveniens,* then, would be the functional equivalent of a decision that defendants' acts are beyond the reach of the Sherman Act.")[6]

Unlike the facts in those cases, the district court here found "that German law recognizes products liability and wrongful death actions under Sections 823 and 844 of the German civil code." In addition, the record supports the conclusion that all parties—plaintiffs, Fairchild, and also the potential third parties—are within the jurisdiction of the German courts. Based upon these findings, the district court concluded that "an adequate and available foreign forum exists" for the resolution of Appellants' claims in Germany. We agree that this case does not involve issues peculiar to American jurisprudence, and we conclude that the results reached in *National City Lines* and *Mitsui* are therefore not controlling precedents in this case.

*National City Lines I* does lay before us, however, the *approach* required to be taken in judging whether Congress, by its enactment of a statute vesting jurisdiction in the courts and prescribing venue, has thereby deprived the courts of discretionary power to defeat the plaintiff's choice of venue and has thus rendered the doctrine of *forum non conveniens* to be of no effect. The Court wrote:

> [The question] is one not to be answered by such indecisive inquiries as whether the venue or jurisdictional statute is labeled a "special" or a "general" one. Nor is it to be determined merely by the court's view that applicability of the doctrine would serve the ends of justice in the particular case. *It is rather to be decided, upon consideration of all the relevant materials, by whether the legislative purpose and the effect of the language used to achieve it were to vest the power of choice in the plaintiff or to confer power upon the courts to qualify his selection.*

334 U.S. at 597, 68 S.Ct. at 1182 (emphasis added). We therefore examine the legislative purpose of the Act, the language used, and whether the legislation is intended to vest power of choice in the plaintiff or, instead, confers power on the courts to qualify the plaintiff's choice of forum.

Title 28 U.S.C. § 157(b)(5) is part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the Act"), which statute "[e]stablished a new system of jurisdiction, *necessitated* by

---

[6]The court also noted that the antitrust statutes are penal in nature, and that principles of international law preclude one country's courts from executing the penal laws of another. *Mitsui,* 671 F.2d at 891.

the Supreme Court's ruling in *Northern Pipeline Constru. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)...." 130 Cong.Rec. H 6087-6088 (June 20, 1984) (floor statements) [emphasis added]. In *Marathon,* the United States Supreme Court had held that a previous grant to bankruptcy courts of sweeping jurisdiction was unconstitutional because it vested Article III power in judges who do not enjoy the protections and safeguards specified in that article. *Id.* at 62, 102 S.Ct. at 2867. Faced with the possibility that all matters previously delegated to bankruptcy courts would again be borne by the already overburdened Article III courts, Congress enacted § 157(b)(5) "to conform the bankruptcy statute to the dictates of *Marathon* " by excluding from bankruptcy court jurisdiction subject matter that is not specifically derived from the bankruptcy laws. *Matter of Wood,* 825 F.2d 90, 95 (5th Cir.1987).[7] This intent is manifested throughout the statute's legislative history. *See* 130 Cong.Rec. S 8891 (June 29, 1984) (remarks of Sen. Hatch), *reprinted in* 1984 U.S.C.C.A.N. at 590 ("Title I [which includes § 157(b)(5) ] corrects the constitutional flaw discerned by the Supreme Court in the *Marathon* case which prohibited bankruptcy judges, who lack life tenure, from deciding certain bankruptcy cases grounded in State law."); 130 Cong.Rec. H 7489 (June 29, 1984) (remarks of Cong. Rodino), *reprinted in* 1984 U.S.C.C.A.N. at 576 ("Title I creates a new bankruptcy court arrangement to replace the provisions enacted in the Bankruptcy Reform Act of 1978—Public Law 95-598—which were found unconstitutional by the U.S. Supreme Court in [*Marathon* ].") By placing in the district courts jurisdiction over certain types of cases, specifically personal injury and wrongful death actions, Congress responded directly to the constitutional infirmities identified by the Court in *Marathon* while preserving the Article I administrative court system that it had created to deal with bankruptcy-related matters.

Appellants argue that Congress's purpose was to consolidate all bankruptcy related matters and that Section 157(b)(5) was added as a special venue provision to advance the concept of a "single

---

[7]Section 157(b)(5) was drafted to limit the bankruptcy court's authority to so-called "core proceedings," a term coined in *Marathon* to refer to "the restructuring of debtor-creditor relations." *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871. Personal injury and wrongful death actions are "non-core" proceedings and thus cannot be heard by a bankruptcy court. *See* 130 Cong.Rec. H 7492 (June 29, 1984) (floor statements of Rep. Kastenmeier).

forum" for all bankruptcy related matters. This "single forum" argument is undercut, however, by the explicit language of § 157(b)(5), which itself specifies a choice of forums in which a bankruptcy-related wrongful death action may be heard:  in the district court for the district in which the bankruptcy is pending *or in the district in which the claim arose.*  The passages quoted by Appellants in support of their position actually militate against their "single forum" argument.  The language provides that consolidation of actions in the forum where the bankruptcy is pending is *permissible,* but *not mandatory.*  As stated by the First Circuit:  "The new structure would make it *possible* to the extent constitutionally permissible to hear matters relating to a single bankruptcy in a single forum." *In re Arnold Print Works, Inc.,* 815 F.2d 165, 167 (1st Cir.1987) [emphasis added].[8]

Congress's express conference of power on the district court in which the bankruptcy is pending to fix venue in the jurisdiction in which a plaintiff's cause of action arises, plainly indicates Congress's recognition (1) that that jurisdiction, as the site of the wrongful death, may have an actual interest in litigating the matter, and (2) that most eyewitnesses to the incident and at least some evidence may be located there.  In light of such a provision, we cannot fairly impute to Congress an intention implicitly to remove from the courts their inherent power also to effect the transfer of an appropriate wrongful death claim to a foreign forum where the cause of action arose.

The principal cases relied upon by Appellants involve application of § 157(b)(5) to domestic litigation, which § 157(b)(5) specifically addresses.  Thus, for example, in *A.H. Robbins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), the district court in which was pending the Chapter 11 bankruptcy of the manufacturer of the Dalkon Shield, entered a tentative order that all actions against the debtor based upon personal injury tort or wrongful death claims arising from use of the Dalkon Shield would be tried in that district

---

[8]Appellants also argue that the bankruptcy court could maintain some supervision over the bankruptcy-related claims even while they are being litigated in another federal court, but not if the dismissal were to a foreign country.  The argument is not persuasive.  First, there is no sign that Congress intended for a district court in which the bankruptcy is filed to supervise the adjudication of a wrongful death action that it permits or directs to be tried in another district. And second, in this day of instant worldwide communications, the progress of a wrongful death case pending in Germany can be followed by the district court where the bankruptcy is pending virtually as easily as following the progress of a case in an adjacent judicial district.

court. The principal issue was whether transfer of the cases from other districts (5000 cases were pending) could be ordered by the receiving district court in which the bankruptcy was pending, or whether transfers, if made at all, would need to be ordered by the various district courts where the cases were pending, pursuant to the general bankruptcy venue statute allowing transfers in the interest of justice or for the convenience of the parties. *See* 28 U.S.C. § 1412. The Fourth Circuit had "no difficulty" in finding that the district court in which the bankruptcy was pending had authority under § 157(b)(5) to fix venue of personal injury tort actions against the debtor regardless of the district in which the controversy was pending. In reconciling § 1412 with § 157(b)(5) the Court wrote that as to a special group of cases, "to wit, personal injury tort claims against a debtor in Chapter 11 proceedings wherever pending," § 157(b)(5) is "supreme." Appellants in the case at bar emphasize that statement to argue that § 157(b)(5) is also "supreme" in the sense of *denying* to the same district court the power to dismiss a case under the doctrine of *forum non conveniens* in order to effect an international transfer to a forum where the action arose. This argument is flawed, first, because § 157(b)(5) clearly confers *enlarged* powers upon the bankruptcy district court to fix venue, with no apparent intent to diminish venue powers already held by the court; and second, because the Fourth Circuit was engaged *only* in reconciling §§ 1412 and 157(b)(5), and found that between the two sections the latter was "supreme" in that limited context; the court never had before it a question of whether enactment of § 157(b)(5) served *sub silentio* to rescind the doctrine of *forum non conveniens.*

In *In re White Motor Credit,* 761 F.2d 270 (6th Cir.1985), also relied on by Appellants, the district court in which the bankruptcy was pending ordered that 160 separate, unliquidated and contingent products liability cases against the debtor, pending in various state and federal courts, would be left for adjudication in those courts. On appeal the debtor, similar to Appellants here, argued that § 157(b)(5) *curtailed* the district court's discretion over venue. The debtor argued that the new statute prevented the district court from abstaining as it had done and instead compelled the court to order trials either before it or in the federal district courts where the claims arose. The Sixth Circuit wrote,

> [w]hen read in isolation, section 157(b)(5) seems to support the debtor's contention that the tort claims may not be liquidated in other courts, as the District Court has ordered; but a reading of the entire law in light of its purpose and history leads to the opposite conclusion.

761 F.2d at 271. The court went on to construe § 157(b)(5) in harmony with § 1334(c)(1), which allows discretionary abstention, and held that the district court had "authority to leave tort cases in the courts [including state courts] in which they are pending for liquidation there." 761 F.2d at 273. Thus, in *White Motor Credit* § 157(b)(5) once again was construed to *enlarge* the district court's power to fix venue over personal injury tort cases related to the bankruptcy pending in such court.

Other provisions of Title 28 demonstrate Congress's intent *not* to require the district courts to entertain all bankruptcy-related cases over which they have jurisdiction. 28 U.S.C. § 1334(b) provides that the district court's jurisdiction of such matters is "original but *not exclusive.* " Moreover, 28 U.S.C. § 1334(c)(1) provides: "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or relating to a case under title 11." Courts interpreting § 1334(c) have held that that provision "summarizes and incorporates federal non-bankruptcy abstention doctrines." *In re Pan American Corp.,* 950 F.2d 839 (2d Cir.1991), *quoting General American Communications Corp. v. Landsell,* 130 B.R. 136, 146 (S.D.N.Y.1991). Again, it does not follow that Congress would expressly allow the federal district courts to defer by abstention to state courts "in the interest of justice," but would at the same time implicitly divest them of their inherent power to abstain when the interest of justice would be served by a case being heard in a foreign tribunal where the action arose.

An examination of Section 157 in its entirety is also instructive. The several subsections variously provide for referrals of cases to the bankruptcy judges; allow bankruptcy judges to hear and determine all cases under Title 11 and all core proceedings arising under Title 11; list numerous examples of core proceedings; require the bankruptcy judge to determine if a proceeding is a core proceeding; exempt non-core proceedings from the mandatory abstention provisions of § 1334(c)(2); outline conditions under which a bankruptcy judge may hear a non-core proceeding related to a case under Title 11 and make recommendations to the District Judge; authorize the district court to

withdraw any case or proceeding referred to the bankruptcy judge; and similar matters. Embedded in this procedural section is subsection (b)(5), at issue in this case. Read in the context of Section 157, where it appears, and in the context of the history giving rise to the Act and its remedial purpose, the language of § 157(b)(5) delineates jurisdiction only as between the bankruptcy courts and the district courts. In other words, non-core proceedings such as personal injury tort and wrongful death claims shall not be adjudicated in bankruptcy court, but in the Article III district court. Moreover, the district court in which the bankruptcy is pending shall have *added* power to order tried in its own venue personal injury tort and wrongful death claims filed elsewhere, or to order such cases tried in the districts where the claims arose. Once a personal injury tort or wrongful death claim is lodged in the district court where the bankruptcy is pending, however, neither the Act itself nor the legislative history of the Act evidences any intent on the part of Congress to abrogate the long-standing doctrine of *forum non conveniens* in the context of foreign transfers. Indeed, there is no reference to the doctrine of *forum non conveniens* anywhere in the statute's legislative history.[9]

This Court was confronted with a similar issue in *In re Air Crash Disaster.* Plaintiff argued that certain language in the Warsaw Convention implicitly prevented a district court from considering and applying the doctrine of *forum non conveniens.* The argument was rejected:

> The party initiating the action enjoys the prerogative of choosing between [several] possible [national] forums but that selection is not inviolate. That choice is then subject to the procedural requirements and devices that are part of that forum's internal laws.... No evidence can be found anywhere that the drafters of the [Warsaw] Convention intended to alter the judicial system of any country. We simply do not believe that the United States through adherence to the Convention has meant to forfeit such a valuable procedural tool as the doctrine of *forum non conveniens.*
>
> If we were to adopt the plaintiff's construction ..., American courts could become the forums for litigation that has little or no relationship with this country. The plaintiff's interpretation ... cuts against the Convention's underlying purpose of ensuring that a dispute arising out of an air travel accident is litigated in a forum that has an actual interest in the matter.

*Id.* at 1162 [citations omitted]. Similarly, the First Circuit held that a special venue provision in the United States securities laws does not prevent a district court from effecting foreign transfers under

---

[9]Likewise, a leading bankruptcy treatise's discussion of § 157(b)(5) does not even mention *forum non conveniens,* much less its "implied" repeal. *See* 1 *Collier on Bankruptcy* § 3.01 pp. 3, 82, 86 (15th Ed.1990).

the doctrine of *forum non conveniens:*

> [W]e can find no good policy reason for reading the special venue provisions as if someone in Congress really intended them to remove the courts' legal power to invoke the doctrine of *forum non conveniens* in an otherwise appropriate case. The growing interdependence of formerly separate national economies, the increased extent to which commerce is international, and the greater likelihood that an act performed in one country will affect citizens of another, all argue for expanded efforts to help the world's legal systems work together, in harmony, rather than at cross purposes. To insist that American courts hear cases where the balance of convenience and the interest of justice require that they be brought elsewhere will simply encourage an international forum-shopping that would increase the likelihood that decisions made in one country will cause (through lack of awareness or understanding) adverse effects in another, eroding uniformity or thwarting the aims of law and policy. And, to deprive American courts of their transfer power when, but only when, one of more than three hundred special venue statutes applies, would create a hodge-podge that would, or would not, bring about American adjudication of an essentially foreign controversy, depending upon the pure happenstance that Congress—at some perhaps distant period and likely out of a desire to widen plaintiffs' venue choices in typical domestic cases—enacted a "special venue" provision. *See* Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3804 at 28 n. 2 (citing ALI study listing some 330 venue provisions in section of the United States Code not in Title 28). Such a result would seem thoroughly unsound.

*Howe v. Goldcore Investments, Inc.,* 946 F.2d 944, 950 (1st Cir.1991). *See also Cruz v. Maritime Co. of Philippines,* 702 F.2d 47, 48 (2d Cir.1983) (upholding *forum non conveniens* dismissal of Jones Act claim even though Jones Act provides that jurisdiction "shall be" in the district court.)

From our review of the relevant materials, the legislative purpose, and the effect of the language used to achieve that purpose, we conclude that § 157(b)(5) was intended to confer new power upon the district court in which a bankruptcy is pending to qualify the choice of venue made by a plaintiff, and was not enacted "to vest the power of choice in the plaintiff."[10] An enactment conferring upon the district court additional power to control venue cannot properly be construed to deprive the courts of their established discretionary powers over venue. Under such circumstances specific legislation would be necessary to abrogate the doctrine of *forum non conveniens.* There is no evidence here of a Congressional intent to do so by enactment of 28 U.S.C. § 157(b)(5), and we cannot construe the language more broadly than appears to have been intended by Congress to achieve the purpose of the Act. Especially in view of Congress's expressed intent that district courts in which the bankruptcy is pending may order nation-wide transfers of cases to permit, for example, wrongful death claims to be tried in any district where they may arise, we cannot read into the statute

---

[10]*United States v. Natl. City Lines,* 334 U.S. at 597, 68 S.Ct. at 1182.

an implied repeal of the doctrine by which the courts have discretion to effect identical transfers to foreign tribunals where wrongful death actions arise. Accordingly, we hold that § 157(b)(5) does not abrogate the doctrine of *forum non conveniens* in the context of foreign transfers and that the district court was not precluded by such statute from dismissing the instant action on *forum non conveniens* grounds.

The second issue raised by Appellants, namely, whether abstention and remand are the district court's only available alternatives to retaining jurisdiction over a bankruptcy-related wrongful death case, is rendered moot by our holding above. We therefore now consider the third issue raised: whether the district court committed a clear abuse of discretion in ordering the *forum non conveniens* dismissal.

*Review of the District Court's Forum Non Conveniens Dismissal*

A district court's grant or denial of a motion to dismiss on the grounds of *forum non conveniens* may be reversed only where there has been a clear abuse of discretion. *Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 266 ; *In re Air Crash Disaster,* 821 F.2d at 1147. Where the district court "has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Reyno,* 454 U.S. at 257, 102 S.Ct. at 266 (upholding district court's dismissal of a products liability suit for reasons of convenience of trial, and requiring transfer of the case from Pennsylvania to Scotland despite the presence of Pennsylvania defendants and the likelihood that Scottish law was less favorable to Plaintiffs).

Appellants first contend that in granting the *forum non conveniens* dismissal the district court abused its discretion by "fail[ing] to consider that Fairchild was estopped from moving to dismiss." (Appellants' Brief at 22). Specifically, Appellants argue that Fairchild's removal of the case from state court in Bexar County to federal court in the Western District of Texas precluded Fairchild from later moving to dismiss or to transfer the case to any other forum. In support of this position, Appellants rely primarily on *Ins. Co. of North America v. Ozean Stinnes-Linien,* 367 F.2d 224, 226-227 (5th Cir.1966), wherein this Court held that a domestic transfer pursuant to 28 U.S.C. § 1404(a) precluded a subsequent motion to dismiss on the grounds of *forum non conveniens.* We find that

*Ozean* is inapplicable to this case, as this case does not involve a § 1404(a) motion to transfer. Moreover, the United States Supreme Court has upheld, without any discussion of estoppel, a district court's dismissal under *forum non conveniens* even where the case had previously been removed to federal court and transferred to a different federal forum under § 1404(a). *See Reyno,* 454 U.S. at 235, 102 S.Ct. at 252; *See also Nolan v. Boeing Co.* 762 F.Supp. 680 (E.D.La.1989) (*forum non conveniens* dismissal granted after removal to federal court).

Appellant next contends that the district court abused its discretion in its application of the *forum non conveniens* analysis. A *forum non conveniens* analysis involves a three step inquiry. First, the court must determine whether there exists another forum that is available to the litigants and would provide an adequate remedy to the prevailing party. *Reyno,* 454 U.S. at 234 n. 22, 102 S.Ct. 265 n. 22; *In re Air Crash Disaster,* 821 F.2d at 1164. "A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum." *In re Air Crash Disaster,* 821 F.2d at 1165; *Syndicate 420,* 796 F.2d at 830; *Calavo Growers of California v. Belgium,* 632 F.2d 963, 968 (2d Cir.1980). "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *In re Air Crash Disaster,* 821 F.2d at 1165, *citing Reyno,* 454 U.S. at 253, 102 S.Ct. at 265; *Syndicate 420,* 796 F.2d at 829.

The district court determined that the courts of Germany could provide an adequate, available forum for the resolution of plaintiffs' actions. The court found: (1) that German law recognizes products liability and wrongful death actions under Sections 823 and 844 of the German civil code, and (2) that all parties in the case are within the jurisdiction of the German courts. Appellants have not challenged these findings, and we find no abuse of discretion in the trial court's holding.

The second step in the analysis requires a balancing of "private interest" factors. Such factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses;[11] (3)

---

[11]*See De Melo v. Lederle Laboratories Div. of American Cyanamid Corp.,* 801 F.2d 1058, 1063 (8th Cir.1986) ("It is of considerable importance ... that litigation in the United States would deprive Lederle of compulsory process....") *See also Schertenleib v. Traum,* 589 F.2d 1156,

probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed, and expense of trial or the enforceability of a judgment if obtained. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *In re Air Crash Disaster,* 821 F.2d at 1162-1163. While reviewing these private interest factors, the court should also consider whether the defendant's motion to dismiss was filed in a timely manner. *In re Air Crash Disaster,* 821 F.2d at 1165.

In the case at bar, the district court found that several private interest factors favored dismissal, including (1) the existence in Germany of almost all of the physical evidence relating to the accident, including meteorological data, testimony of other pilots and eyewitnesses, cockpit voice recorder tapes and information from the flight data recorder, photographs of the wreckage, air traffic controllers' reports, and the results of tests performed by the German Accident Investigation Board ("GAIB") on the components and wreckage of NFD Flight 108; (2) the fact that NFD's headquarters are in Germany, and thus all evidence about the maintenance of the aircraft, the operational history of the aircraft, and records concerning the hiring and training practices of NFD are in Germany; (3) the fact that all evidence required to calculate damages, such as the decedents' health, life expectancies, educations, and present and future earning capacities, is in Germany, as are all of the witnesses with knowledge relating to those matters; (4) the fact that the witnesses in Germany are beyond the reach of the district court's compulsory process, thus requiring the parties, if jurisdiction over the case were retained, to face the cost of deposing foreign witnesses and the prospect of not having live witnesses at trial; (5) the inability of Fairchild to implead NFD and the co-pilot's estate as third-party defendants if the case were retained in the United States; and (6) language problems that would arise if the case were tried in the United States, including the need to translate into English all documents and investigation reports created in Germany. On the other hand, the district court found some factors in favor of retaining jurisdiction, including (1) respect for the plaintiffs' choice of

---

1165 (2d Cir.1978) ("inability to bring [witnesses] here for live cross-examination before a fact-finder" is "[p]erhaps the most significant problem" making adjudication in a United States court inappropriate).

forum;[12] and (2) potential difficulties regarding enforcement of any judgment that might be rendered by a German court.[13] (District Court Opinion at 8-12).

Appellants contend that the district court failed to give sufficient weight to the fact that certain of their evidence is located in Texas. Additionally, Appellants stress that GAIB Chief Inspector Schlegel agreed to testify in Texas and that the GAIB investigation report, which would contain much of the meteorological and air traffic data, would be admissible in the United States courts. We find, however, that the district court did give attention to such considerations. In fact, after outlining the many factors favoring transfer of this case to Germany the trial court wrote:

> To be fair, there is some evidence in the United States as well. Specifically, plaintiffs point to the fact that (1) there are nineteen present and former Fairchild employees in San Antonio who were responsible for the electrical system design, its testing and analysis, lightning testing and analysis, accident investigation, post-crash tests and post-crash remedial measures; (2) there are three Federal Aviation Administration ("FAA") personnel in Texas who certified the aircraft, investigated the crash, and issued the post-crash Airworthiness Directive; and (3) there are other experts on similar prior incidents and post-crash review of the lightning system of the aircraft who are located in Massachusetts, Ohio and Oregon. Additionally, some of the evidence that is in Germany could be made available in Texas.

(District Court Opinion at 9). In short, the trial court gave exhaustive and meticulous consideration to the private interest factors and concluded that, "on the whole, ... the Court believes that the bulk of the evidence is in Germany and is more readily accessible there." No abuse of discretion has been demonstrated in the trial court's holding. Moreover, Fairchild's motion to dismiss, filed less than 130 days after the district court denied Plaintiffs' motion to abstain or remand, was filed in a timely manner.

Because we find that the district court did not err in holding that an appropriate alternate forum exists for Appellants' claims and that the private interest factors weigh in favor of a *forum non*

---

[12]Although there is generally a strong presumption in favor of a plaintiff's choice of forum, the United States Supreme Court has held that "a foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home forum." *Reyno,* 454 U.S. at 256, 102 S.Ct. at 265-266.

[13]In the instant case, the enforcement problem was mitigated substantially by the fact that the district court imposed conditions upon dismissal of the case, including (1) that Fairchild agree to satisfy any judgment rendered by the German courts to the extent allowed by the bankruptcy plan; and (2) that Fairchild submit to the district court's retention of jurisdiction over the matter in the event that any judgments were not satisfied. (District Court Opinion at 15-16).

*conveniens* dismissal, we need not reach the third step of the analysis, which involves a consideration of certain "public interest" factors.[14] *Empresa Lineas Maritimas v. Schichau-Unterweser,* 955 F.2d 368, 376 (5th Cir.1992), *citing In re Air Crash Disaster,* 821 F.2d at 1165 (mandating consideration of public interest factors only if private interests do not favor dismissal). Nonetheless we find that the district court considered the public interest factors,[15] that it committed no abuse of discretion in reaching its conclusions, and that Appellants' complaints are without merit.[16]

In light of the foregoing, we find no clear abuse of the district court's discretion. The airline crash itself and other principal events surrounding the accident took place in Germany, the vast majority of the expected evidence and anticipated witnesses are located in Germany, and Germany is the residence of all plaintiffs and of three potential third-party defendants. While Appellants correctly assert that both Germany and the State of Texas have contacts with the subject matter, we agree with the district court's determination that, "on balance, ... Germany is the focal point of this case."

AFFIRMED.

---

[14]Such "public interest" factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in the forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *In re Air Crash Disaster,* 821 F.2d at 1162-1163, *citing Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843.

[15]The district court considered the following public interest factors: (1) the heavy caseload of the Western District of Texas; (2) the strong interest Germany has in ensuring that its citizens are compensated for harms done to them; (3) the interest of Texas in deterring defective products; and (4) the likelihood that German law would govern the case. The court then concluded that these factors favored dismissal.

[16]Specifically, Appellants argue that the district court (1) failed to consider the interests of the Western District of Texas as the locus of Fairchild's bankruptcy; (2) failed to recognize a "significant interest" on the part of Texas with respect to the liability of Texas manufacturers for products manufactured in Texas; and (3) gave undue weight to the *Reyno* and *Nolan* cases. *See Nolan v. Boeing Co.,* 919 F.2d 1058 (5th Cir.1990). Appellants additionally contest the district court's determination that the law of Germany, and not that of Texas, applies to this case.