**CALUMET NATIONAL BANK,
et al., Plaintiffs,**

v.

**Robert M. LEVINE, Defendant.**

**No. 2:93–CV–295–RL.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 22, 1995.

Robert M. Hess, James M. Kapitan, Sachs and Hess, Hammond, IN, for plaintiffs.

Robert M. Levine, pro se.

### *ORDER*

LOZANO, District Judge.

This matter is before the Court on the Motion to Reconsider Dismissal of the Complaint for Lack of Jurisdiction filed by pro se Defendant, Robert M. Levine, on April 25, 1994. For the reasons set forth below, the Motion is **DENIED IN PART,** ruling is **DEFERRED IN PART,** and all proceedings in this case are hereby **STAYED.**

## BACKGROUND

This is a wrongful death and personal injury action that is intertwined with an underlying bankruptcy case which is pending in another court. In this action, Plaintiffs allege that pursuant to orders and payment from Defendant, Robert Levine, a man named Bruce McKinney killed both Donald Levine and Marcia Levine and battered Mark Levine.[1] These attacks occurred in Munster, Indiana on November 9, 1989.

Several months after the attacks, Robert Levine filed a voluntary Chapter 11 bankruptcy petition which was later converted to a Chapter 7 petition that is now pending in the bankruptcy court for the District of Arizona. (Mot. to Reconsider, Exh. A, p. 4) In 1991, after Levine filed his Chapter 11 petition, but before the petition was converted to Chapter 7, Plaintiffs filed in the Arizona bankruptcy court a proof of claims against Levine arising from the attacks and sounding in wrongful death and personal injury. *Id.* In September 1993, the Arizona bankruptcy court issued an order declaring that it lacked jurisdiction to hear Plaintiffs' wrongful death and personal injury claims, yet also modifying the automatic bankruptcy stay to allow Plaintiffs to proceed to liquidate their claims "in a proper forum." (Mot. to Reconsider, Exh. B) The bankruptcy court did not attempt to specify which forum that might be.

On October 5, 1993, Plaintiffs instituted the present action against Levine in this Court, seeking damages sounding in wrongful death and personal injury based on the attacks in Munster. Levine is proceeding pro se in this action, and, as best as the Court can determine, in the present motion seeks the following: dismissal for lack of subject matter jurisdiction, transfer or dismissal based on improper venue, and dismissal based on failure to exhaust administrative remedies.

## DISCUSSION

### Propriety of the Motion to Reconsider

Levine has submitted what he labeled a "Motion to Reconsider" the issue of whether this Court should dismiss this case for "Lack of Jurisdiction." Indeed, Levine argued in a previous motion that this Court lacked jurisdiction over Plaintiffs' claims because Levine was then appealing the above-mentioned order of the Arizona bankruptcy court modifying the automatic stay against this suit. This Court rejected Levine's arguments in an order issued on December 16, 1993. In the course of that order, the Court observed in passing that Plaintiffs had pled the elements of diversity jurisdiction in their Complaint. Seeming to take a cue from that casual observation, in the present Motion Levine asserts lack of diversity jurisdiction and, as mentioned above, other grounds for dismissal or transfer.

 Nothing in the Federal Rules of Civil Procedure expressly authorizes litigants to bring a motion to reconsider a court's ruling. Still, courts have carved out a limited place for such motions where, for example, the court has suffered a patent misunderstanding of a party's position, where material and previously undiscoverable facts have arisen, or where a significant change in the law has occurred since the ruling. *See, e.g., Quaker Alloy Casting v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 287–88 (N.D.Ill.1988); *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 404 (7th Cir.1986); *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985). Levine's Motion is not supported by any such circumstance. Moreover, in the Motion Levine asserts new matters that he could have and perhaps should have asserted in his earlier motion. *See* Fed.R.Civ.P. 12(g)–(h). Of course, it is not lost on the Court that Levine is pro se. Given that status, the Court will entertain Levine's Motion on the merits.

### Subject Matter Jurisdiction

 Levine has argued lack of diversity jurisdiction. Plaintiffs have pled the citizenship and amount in controversy requirements of diversity jurisdiction and argue that those requirements are in fact met. In any event, this dispute is inconsequential because diversity jurisdiction need not exist for this Court to hear this case.

---

1. Robert Levine was later convicted in this Court of criminal charges based on these attacks.

■ District courts have "original but not exclusive jurisdiction of all civil proceedings ... related to" title 11 bankruptcy cases. 28 U.S.C. § 1334(b). When a proceeding is related to a bankruptcy case, no diversity or traditional federal question jurisdiction is necessary for a federal court to adjudicate the proceeding. *Ram Constr. Co., Inc. v. Port Authority of Allegheny County,* 49 B.R. 363, 364–66 (W.D.Pa.1985); *In re Louis Fleet,* 53 B.R. 833, 837 n. 5 (Bankr. E.D.Pa.1985); *In re Bible Voice, Inc.,* 34 B.R. 733, 736 (C.D.Cal.1983). A proceeding is "related to" a bankruptcy case when it may potentially affect the bankruptcy estate. *Fleet,* 53 B.R. at 837. Here, Plaintiffs assert against Levine, a bankruptcy debtor, claims that might result in a substantial judgment against Levine and, in turn, a claim against the bankruptcy estate. Therefore, Plaintiffs' claims appear to be related to Levine's bankruptcy case.[2] *See In re Pharmakinetics Laboratories, Inc.,* 139 B.R. 350, 352 (D.Md. 1992) (summarily concluding that a tort-type action against a Chapter 11 debtor was related to the debtor's bankruptcy case); *In re Hughes,* 98 B.R. 115, 118 (Bankr.D.C.1988) (noting that a personal injury/wrongful death action seeking substantial damages certainly could ultimately affect the bankruptcy estate of a Chapter 11 debtor in possession). The Court concludes that it has subject matter jurisdiction over this case.

*Venue Objections*

■ Levine has advanced what the Court will treat as a request for transfer of venue. According to Levine, this action should be transferred to the district court for the District of Arizona because (1) that is where his bankruptcy case is pending, and (2) the wrongful death and personal injury claims against him did not arise in the Northern District of Indiana. Levine cites as authority 28 U.S.C. section 157(b)(5), which provides as follows:

The district court shall order that personal injury tort and wrongful death claims [against bankruptcy debtors] shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Although Levine bases his request on section[3] 157(b)(5), that provision does not empower this Court to transfer this case. As written and as applied by the courts, section 157(b)(5) most obviously contemplates that the district court of the district where the bankruptcy case is pending—for Levine, the Arizona district court—will decide where personal injury tort/wrongful death ("PITWD") actions against bankruptcy debtors are tried. Consequently, by directing his section 157(b)(5) motion to this Court, Levine has raised the issue of whether a district court other than the district court where the bankruptcy case is pending ("the bankruptcy district") may grant a motion for transfer founded on section 157(b)(5).

■ Although lacking substantial on-point authority, the Court does not find this issue difficult to resolve. First and foremost, both the plain language and legislative history of section 157(b)(5) make clear that the district court of the bankruptcy district is the court that chooses between the two possible forums designated in the section. 28 U.S.C. § 157(b)(5); *see* 1 Collier on Bankruptcy ¶ 3.01, at 3–85 (15th ed.) (citing 130 Cong. Rec. H7490 (daily ed. June 29, 1984)). Indeed, there seems little room for any other interpretation. *See In re Pan Am Corp.,* 16 F.3d 513, 516 (2d Cir.1994) (noting that a motion for transfer pursuant to section 157(b)(5) "should be made to the district court in the district where the bankruptcy is proceeding"); *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1010–11 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); 1 Collier, *supra,* ¶ 3.01, at 3–88 (stating flatly that under section

---

**2.** The Court's ability to make a categorical conclusion is constrained by having a limited record before it regarding exactly how a judgment in this case will affect the bankruptcy estate. In any event, Levine raises no argument alleging that a judgment will not affect the estate.

**3.** For the sake of brevity, this order will employ the shorthand term "section" instead of "subsection" or whatever more cumbersome term may most accurately describe a statutory provision being discussed.

157(b)(5) "the venue of a PITWD trial is to be determined by the district in which the title 11 case is pending"). Moreover, a purpose behind section 157(b)(5) is making it possible for a single forum to oversee the many claims and proceedings that might arise in or affect a bankruptcy case. *Pan Am,* 16 F.3d at 516; *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 831 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993); *Piccinin,* 788 F.2d at 1010–11; *see also* 1 Collier, *supra,* ¶ 3.01, at 3–88 (citing *Piccinin* ). That purpose is best served by allowing the court where the bankruptcy case is pending to ultimately decide where a related PITWD action will be tried. *See id.*

The Court concludes that it has no authority to grant Levine's request for transfer under section 157(b)(5). The authority to grant a transfer under that provision lies with the United States District Court for the District of Arizona.

■ It is true that besides section 157(b)(5), other authority for transferring bankruptcy and bankruptcy-related proceedings exists. As a general proposition, "a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *Piccinin,* 788 F.2d at 1010–11. Levine might argue that section 1412 gives this Court authority to transfer this proceeding to Arizona. However, PITWD actions against debtors like Levine form a special class within the realm of bankruptcy law and have been designated for special treatment under section 157(b)(5). *Piccinin,* 788 F.2d at 1011. In other words, while section 1412 represents a general transfer provision, section 157(b)(5) represents a special provision that vests the district court of the bankruptcy district with authority to decide where PITWD actions involving bankruptcy debtors will be tried. *Id.; see Baumgart,* 981 F.2d at 832 (citing *Piccinin* for this proposition). As such, it would usurp the power given to the Arizona district court for

this Court to purport to apply section 1412 to transfer this action, when determining where to try the action is a decision that section 157(b)(5) commits to the Arizona district court. *See Piccinin,* 788 F.2d at 1011. Having exhausted all possible authority for this Court to grant Levine's request for transfer of venue, that request is **DENIED.**

■ Giving a generous reading to Levine's brief, he also appears to argue for dismissal based on improper venue. Of course, whether *dismissal* is the proper remedy for improper venue is a question in itself. In any event, Levine's rationale would be that Plaintiffs were required to commence their action in the District of Arizona—and *then* move *that* court for transfer to this district. Levine would assert that because section 157(b)(5) gives the Arizona district court the power to fix venue, Plaintiffs impermissibly circumvented that power by commencing their action here. In other words, according to Levine, the only proper venue for Plaintiffs to commence their action was the court that had authority to designate the ultimate venue of that action.

■ Indeed, commencing the action in the District of Arizona would have allowed that court the opportunity to exercise its section 157(b)(5) authority to designate venue at the outset of the case. Yet nothing in the language or case-law of section 157(b)(5) suggests that Plaintiffs were required to commence their action in Arizona. Even more, under the venue provision that generally deems where proceedings "related to" a bankruptcy case "may be commenced," section 1409(a), parties have the *option* of commencing an action in the district court of the bankruptcy district, but are not required to commence the action there. 28 U.S.C. § 1409(a); *In re March,* 140 B.R. 387, 389 n. 3 (E.D.Va.1992), *aff'd,* 988 F.2d 498 (4th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993); *Brock v. American Messenger Serv., Inc.,* 65 B.R. 670, 672 (D.N.H.1986); 1 Collier, *supra,* ¶ 3.02, at 3–134.3–.4.[4] Granted, one august authority on bankruptcy law has suggested that the free

---

4. Levine cites 28 U.S.C. section 1408 as authority for his improper venue argument. However, that provision covers only the bankruptcy case itself and not related proceedings such as the present action. 1 Collier, *supra,* § 3.02, at 3–134.3.

choice of forum seemingly allowed for by section 1409(a) may not always be allowed by courts in practice and perhaps should not be allowed for proceedings that are closely tied to the fundamental functions performed by the bankruptcy judge. 1 Collier, *supra*, ¶ 3.02, at 3–135–39. Yet the immediate scope of the proceeding here and the relief sought (PITWD damages) do not appear[5] to implicate, at present, such fundamental functions. *See Hughes*, 98 B.R. at 119 (finding "nothing of a bankruptcy nature" in a state-court PITWD action). Under a plain reading and the prevailing interpretation of section 1409(a), then, Plaintiffs had the option of commencing in a court other than the district court of the bankruptcy district.

■ Also, the rule Levine recommends would prevent parties from pursuing PITWD actions in state court. Notwithstanding the language of section 157(b)(5) that PITWD action against debtors "shall" be tried in one of two federal district courts, a federal court still may exercise its discretion to abstain from assuming jurisdiction over a PITWD action already commenced in a state court. *Baumgart*, 981 F.2d at 832 (citing 28 U.S.C. § 1334(c)(1)); *In re Pan Am Corp.*, 950 F.2d 839, 844–45 (2d Cir.1991). Also, the provision that in the first instance gives district courts their jurisdiction over proceedings related to bankruptcy cases, section 1334(b), grants district courts original but not exclu-

sive jurisdiction, thereby providing that nonfederal forums are available for related proceedings. 28 U.S.C. § 1334(b). Finally, the caseloads of district courts counsel in favor of preserving the option of having PITWD actions heard in a nonfederal forum where appropriate.[6]

■ Specific to this action, when the Arizona bankruptcy court modified its stay to allow Plaintiffs to proceed against Levine, it directed Plaintiffs to do so in a proper forum. This Court cannot identify any rule or policy that would have weighed against Plaintiffs' then choosing to proceed in state court—with Levine being able to move the Arizona district court for transfer to a federal court under section 157(b)(5).[7] Indeed, it is conceivable that a state court chosen by Plaintiffs would have been entirely satisfactory to Levine.

In sum, reading sections 1409(a), 1334(b), and 157(b)(5) together leads to the conclusion that commencing this PITWD action here was not improper. Accordingly, Levine's request for dismissal based on improper venue is **DENIED.**

It seems that with section 157(b)(5), Congress has created a somewhat incongruous and unwieldy vehicle for arriving at the ultimate venue for PITWD actions against bankruptcy debtors.[8] Still, the several provisions

---

5. The Court's ability to make a firm conclusion is constrained by having a limited record before it and by the limited guidance provided by the parties in their briefs.

6. *See Baumgart*, 981 F.2d at 832 (noting that "provisions of Title 28" other than section 157(b)(5) "demonstrate Congress' intent *not* to require the district courts to entertain all bankruptcy-related cases over which they have jurisdiction"); *In re White Motor Credit*, 761 F.2d 270, 274 (6th Cir.1985) ("[I]n large bankruptcy cases with hundreds or even thousands of tort litigants beating on the door of one federal judge, judicial health and survival, or at least judicial economy and expeditiousness, may depend on the court's authority to refer cases to other courts."); *but see Pan Am*, 950 F.2d at 845 (noting that abstention from section 157(b)(5) actions should be "the exception").

7. Section 157(b)(5) bestows upon the district court authority to transfer actions pending in state court. *See, e.g., Pan Am*, 16 F.3d at 516 (observing that section 157(b)(5) plainly autho-

rizes a district court to transfer state court actions to a federal court); *In re United States Lines, Inc.*, 1990 WL 451981, at *1–2 (S.D.N.Y. Nov. 6, 1990) (ordering the transfer of actions pending in state court to federal court).

8. The awkwardness seems inescapable. To illustrate, as it stands here, two district courts will become involved in the venue question and the number of briefs drafted, filed, and ruled on will be greater than might have been the case had Plaintiffs filed in Arizona. Yet, even had Plaintiffs filed in Arizona, that would have generated inefficiency too: Plaintiffs would have commenced an action in one court, all the while intending to move to transfer the action to another court. As another possibility, Levine might not have objected to venue in Indiana, and then, conceivably, no party or court would have had to deal with the venue issue at all, and the PITWD action could have been completely administered by this Court. Other factual permutations are no doubt possible and might present more questions for other courts regarding the mechanics of arriving at final venue under section 157(b)(5).

conceivably bearing on PITWD venue have been fairly well-harmonized in this order. Under section 157(b)(5), the district court for the bankruptcy district has sole authority for ultimately fixing venue for PITWD actions against bankruptcy debtors. Given the particular nature of section 157(b)(5), the section 1412 general transfer provision cannot be treated as bestowing the authority to transfer PITWD actions on any court other than the district court for the bankruptcy district. Notwithstanding section 157(b)(5), sections 1409(a) and 1334(b) allow a PITWD action to be *commenced* in a district other than the bankruptcy district or in state court. By commencing in those courts, however, parties will risk that a successful transfer motion will be lodged in the district court for the bankruptcy district and their original choice of forum will be undone.

In this case, the net result is that the Court has before it a request for transfer of venue that it has no authority to grant and which should have been brought before the Arizona district court. Consequently, the best course for now is as follows: All proceedings in this action are hereby **STAYED** to allow Levine to advance a motion in the Arizona district court for transfer to that court. Levine shall have thirty days from the date of this order to file in this Court a notice that he has made that motion. If Levine fails to file this notice, the Court will then determine what further action is just. Such action may include deeming Levine's venue objection waived and allowing Plaintiffs to go forward with their suit in this Court. *See Dynamics Corp. of America v. CTS Corp.,* 794 F.2d 250, 260 (7th Cir.1986) (noting that venue rights are waivable and ruling that a party waived its venue objection by failing to "follow up on its initial" objection).

Levine also raised in his motion an argument based on failure to exhaust administrative remedies. This Court will not rule on that argument now.[9] At this point, it is uncertain whether this action will ultimately proceed in this Court or the Arizona district court. In this Court's opinion, whichever court ultimately takes the case should be the one that rules on the remaining argument. Accordingly, the Court **DEFERS RULING** on the exhaustion argument.

*CONCLUSION*

For the foregoing reasons, the Motion to Reconsider Dismissal of the Complaint for Lack of Jurisdiction is **DENIED IN PART,** ruling is **DEFERRED IN PART,** and all proceedings in this action are hereby **STAYED.** Defendant shall have thirty days from the date of this order to file with this Court notification that he has moved the United States District Court for the District of Arizona for transfer.

---

9. In any event, this argument is unclear and gives a first impression of not carrying much weight.